IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TALISMAN CASUALTY INSURANCE COMPANY, LLC, | ) ) ) |
| Plaintiff, | ) No. 21 C 6543 ) |
| v. | ) Magistrate Judge Gabriel A. Fuentes ) |
| JENKINS ENVIRONMENTAL, INC. and MCM MANAGEMENT CORPORATION, | ) ) ) ) ) |
| Defendants/Counterclaimants. | ) |

# MEMORANDUM OPINION AND ORDER[1]

Plaintiff Talisman Casualty Insurance Company, LLC ("Talisman" or "Plaintiff") filed the instant complaint for declaratory judgment ("Complaint") against Defendants Jenkins Environmental, Inc. ("Jenkins") and MCM Management Corporation ("MCM") (collectively, Defendants), seeking a declaration that Defendants failed to meet conditions precedent of a performance bond issued by Talisman on behalf of BB Construction Enterprises, Inc. ("BBCE"). (D.E. 1: Compl., ¶ 1.) Jenkins and MCM filed separate counterclaims against Talisman for declaratory judgment, breach of contract, and vexatious and unreasonable delay under Section 155 of the Illinois Insurance Code, 215 ILCS 5/155. (D.E. 10: MCM Counterclaim; D.E. 26-1: Jenkins Counterclaim.) Plaintiff has moved for summary judgment on its declaratory judgment claim and on all Counts in Jenkins' and MCM's Counterclaims. (D.E. 37: Pl.'s Mot. for Summ. J.) The motion is now fully briefed.

---

[1] On February 8, 2022, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Magistrate Judge for all proceedings, including entry of final judgment. (D.E. 22, 24.)

## BACKGROUND

The undisputed facts are as follows:[2]

On December 29, 2017, MCM entered into an agreement with non-party HRE Crawford, LLC ("Crawford Contract"), to act as the prime contractor for certain demolition and removal services at the Crawford Generating Station, located at 3501 South Pulaski, Chicago, Illinois 60623 ("Crawford Project" or "Project"). (D.E. 47: MCM's Response to Plaintiff's Statement Of Material Facts ("MCM's Resp. to PSOF") at ¶¶ 5-6.)[3] On February 26, 2018, MCM entered into a subcontract with Jenkins, under which Jenkins agreed to perform the full scope of work under the Crawford Contract, and on March 1, 2018, Jenkins entered into a subcontract with BBCE ("BBCE Subcontract") for the abatement of all friable asbestos discovered during the Crawford Project's abatement operations. (*Id.* at ¶¶ 7-8.) BBCE was owned and operated by Santiago Rivoir ("Rivoir"). (D.E. 51: Plaintiff's Response to MCM's Statement of Additional Material Facts ("Pl.'s Resp. to MCM's SOF") at ¶ 1.) At the time of the BBCE Subcontract, BBCE's largest contract was approximately $24,000, and BBCE had a negative net working capital of approximately $7,000. (*Id.* at ¶¶ 2, 5.)

---

[2] At the outset, the Court notes that Talisman objects to many of MCM's statements of fact as "irrelevant and immaterial" but does not admit or deny them or otherwise dispute their veracity. (Pl.'s Resp. to MCM's SOF at ¶¶ 3, 6.) This Court's Local Rule 56.1 specifies that a party's response to a statement of facts "must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." L.R. 56.1(e)(2). "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3). Here, the Court exercises its "considerable discretion in interpreting and applying [its] local rules," *Wilson v. Stewart*, 621 F. Supp. 3d 900, 913 (N.D. Ill. 2022), quoting *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 549 (7th Cir. 2017), to deem admitted the facts that have not been disputed or controverted by the other party. *See*, *e.g.*, *Raquet v. Allstate Corp.*, 501 F. Supp. 3d 630, 636-37 (N.D. Ill. 2020) (deeming admitted facts that were objected to on the grounds of relevance but were not otherwise disputed).

[3] Jenkins has joined in MCM's Memorandum in Opposition to Summary Judgment and in MCM's Resp. to PSOF. (D.E. 48.)

On June 5, 2018, Talisman issued Performance Bond No. 1377798 ("Performance Bond") on behalf of BBCE in connection with the BBCE Subcontract, with a total bond amount of $3,600,000. (MCM's Resp. to PSOF at ¶ 9.) The Performance Bond named BBCE as the principal, Talisman as the surety, Jenkins as the owner, and MCM as an additional obligee. (*Id*. at ¶ 10.) The Performance Bond included the following provisions:

§3: If there is no Owner [Jenkins] Default under the Construction Contract, the Surety's [Talisman's] obligation under this Bond shall arise after:

.1 the Owner first provides written notice to the Contractor [BBCE] and the Surety that Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the surety may, withing five (5) business days after receipt of the Owner's notice, request such a conference. . . . If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;

.2 the Owner in writing by registered or certified mail to the Surety and to the Principal [BBCE], declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

.3 the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

§4: Failure on the part of the Owner to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with a condition precedent to the Surety's obligations, or release the Surety from its obligations, except to the extent the Surety demonstrates actual prejudice.

§5: When the Owner has satisfied the conditions of Section 3, and after the Surety is allowed reasonable time to investigate Owner's election to declare Principal in default or terminate Principal, the Surety shall promptly and at the Surety's expense take one of the following actions:

.1 Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract;

  .2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

  .3. Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract . . . and pay to the Owner the amount of damages . . . in excess of the Balance of the Contract Price incurred by the Owner as a result of the Contractor Default; or

  .4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

    (1) After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, make payment to the Owner; or

    (2) Deny liability in whole or in part and notify the Owner, citing reasons for denial.

 §6: If the Surety does not proceed as provided in Section 5 with reasonable promptness, the Surety shall be deemed to be in default on this Bond seven days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner.

(Compl., Ex. A: Performance Bond.)

  Talisman gave Lawrence Polec the responsibility to be a liaison between BBCE and Talisman, and Talisman required BBCE to use a funds control manager. (Pl.'s Resp. to MCM's SOF at ¶¶ 3, 6, 11.) In addition, BBCE hired a consultant, Tony Booth, on the recommendation of Talisman and Polec. (*Id*. at ¶ 9.) BBCE started its work removing friable asbestos in connection with the Crawford Project in June 2018. (MCM's Resp. to PSOF at ¶ 16.)

  On January 17, 2019, the funds control manager reported to Talisman that BBCE had not been paid, and Talisman emailed Polec to request an update. (Pl.'s Resp. to MCM's SOF at ¶ 12.) Polec responded by email on the same day stating that BBCE was "engaging a construction attorney to file a mechanic's lien" but that BBCE retained "[s]upervision on site to mitigate any default circumstances." (*Id*. at ¶ 13.) Jeffrey Keast, Talisman's Director of Risk Management,

responded to Polec stating that this development was "concerning especially since we were not apprised of this situation, sooner." (*Id*. at ¶ 14.) On January 25, Booth sent an email to Polec and Rivoir stating that MCM and Jenkins would not make payments before work was performed. (*Id*. at ¶ 15.) On January 26, Polec requested a conference call with Keast, Booth and Talisman's President, Joe Mercantel. (*Id*. at ¶ 16.) Keast replied to Polec stating that Talisman required BBCE, as principal on the Performance Bond, to be included in the conversation. (*Id*.) Booth then emailed a series of documents directly to Keast beginning on January 30. (*Id*. at ¶ 17.)

On February 6, 2019, Booth emailed Keast stating that Rivoir wanted to complete work on the Project with his own people, but that Jenkins wanted "to put a couple of extra people working in the area with BBCE . . ." (*Id*. at ¶ 19.) Booth noted that Rivoir would likely be unable to cover payroll in March. (*Id*.) On February 13, Defendants sent a joint letter to BBCE and Talisman stating that they were considering declaring BBCE in default under Article 3.1 of the Performance Bond and that Talisman should consider that letter to be notice of the potential default. (MCM's Resp. to PSOF at ¶¶ 18-20.) The letter also stated that Defendants were "not requesting a conference at this time among MCM, [Jenkins], BBCE and Talisman to discuss [BBCE's] performance." (*Id*. at ¶ 20.) Talisman acknowledged receipt of the letter and stated that it was also "not requesting a conference at this time." (*Id*. at ¶ 21.)

On February 17, Rivoir sent an email to Booth, Polec and Jenkins' President and CEO, Michael Cirri, stating that BBCE "won't be able to continue" its participation in the Project unless Jenkins created a new budget, work schedule, and payment plan. (Pl.'s Resp. to MCM's SOF at ¶ 23.) On February 18, Cirri responded to Rivoir via email, copying Polec and Booth, stating that pursuant to the BBCE Subcontract, beginning on February 19, Jenkins would remedy BBCE's default by having others perform the work specified in the BBCE Subcontract, and that the costs

5

for completing the work would be back charged against the original contract amount. (*Id*. at ¶ 24.) Polec forwarded Rivoir's February 17 email to Keast on February 26. (*Id*. at ¶ 27.) There was no communication between Talisman and Defendants from February 18, 2019, until January 13, 2020. (*Id*. at ¶ 31.)

On January 13, 2020, Defendants made a claim on the Performance Bond in the full amount of $3,600,000 due to "BBCE's default and failure to perform." (MCM's Resp. to PSOF at ¶¶ 22-23.) In response, Talisman sent a letter to Defendants on January 21, 2020, making multiple requests for information about the claim. (Pl.'s Resp. to MCM's SOF at ¶ 39.) Keast, as Talisman's Rule 30(b)(6) corporate representative, testified that Talisman asked for "written notice of termination of BBCE," but that Talisman never received it. (*Id*. at ¶¶ 30, 32.) Talisman subsequently sent a letter to Defendants denying their claim in its entirety based on Defendants' "failure to provide information or additional information required, which is integral to determining the validity of the claim." (*Id*. at ¶ 40.)

## ANALYSIS

Summary judgment is appropriate where the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although federal law governs procedural issues, where federal jurisdiction is premised on diversity jurisdiction, as it is here, state law – in this case, Illinois law – applies to substantive issues. *Skyrise Constr. Grp., LLC v. Annex Constr., LLC*, 956 F.3d 950, 956 (7th Cir. 2020). In deciding Plaintiff's motion for summary judgment, the Court "examine[s] the record in the light most favorable to [the non-moving party]

and construe[s] all reasonable inferences from the evidence in [its] favor." *Horne v. Elec. Eel Mfg. Co., Inc.*, 987 F.3d 704, 713 (7th Cir. 2021). "The burden on the non-movant is not onerous. . . but [the non-movant] must go beyond the pleadings . . . to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [its] favor." *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019) (citations and quotations omitted).

I. **A Genuine Issue of Material Fact Exists as to Whether Defendants Materially Breached the Notice Provisions in the Performance Bond.**

Talisman argues that it is entitled to summary judgment because Defendants failed to perform the following conditions precedent under the Performance Bond: (1) declare BBCE in default; (2) terminate the contract with BBCE; and (3) notify Talisman of the same pursuant to the terms in the Performance Bond. (D.E. 38: Talisman Mem. in Supp. of Summ. J. ("Talisman Mem.") at 1.)

A. **The Material Breach Doctrine Applies to Surety Contracts.**

"A performance bond is a contract, and contract principles apply in interpreting a performance bond." *Solai & Cameron, Inc. v. Plainfield Cmty. Consol. Sch. Dist. No. 202*, 374 Ill. App. 3d 825, 836 (2007). The "material breach doctrine" of Illinois contract law applies to determine whether a surety's obligations to guarantee performance of a contractor's contractual obligations on a construction project were nullified by the owner's actions in terminating and replacing the contractor. *See id.*; *see also Dragon Constr., Inc. v. Parkway Bank & Tr.*, 287 Ill. App. 3d 29 (1997). Talisman does not mention the issue of material breach, even in reply to Defendants' argument that genuine issues of material fact exist as to whether they materially breached the Performance Bond. (D.E. 46: Defs.' Opp. to Summ. J. ("Defs.' Opp.") at 11.) But "[t]he 'materiality' issue cannot be avoided" because "only a 'material' breach of a contract

7

provision by one party will justify non-performance by the other party." *Sahadi v. Cont'l Ill. Nat'l Bank & Trust Co.*, 706 F.2d 193, 196, 200 (7th Cir. 1983).

### B. The Material Breach Doctrine Is a Complicated Question of Fact that Precludes Summary Judgment.

Like all parties to a contract, a surety "is not bound beyond the express terms of the performance bond and, when interpreting a performance bond, the court must look solely to the unambiguous language of the bond as evidence of the intentions of the parties." *Solai*, 374 Ill. App. 3d at 836. However, even if the Performance Bond unambiguously states how Defendants were to provide written notice of default and termination, "this is merely the beginning, not the end, of the required factfinding analysis." *Sahadi*, 706 F.2d at 196, 200. "[U]nder Illinois law, the materiality inquiry focuses on two interrelated issues: (1) the intent of the parties with respect to the disputed provision; and (2) the equitable factors and circumstances surrounding the breach of the provision." *Elda Arnhold & Byzantio, LLC v. Ocean Atl. Woodland Corp.*, 284 F.3d 693, 700 (7th Cir. 2002). This inquiry "must take into account the totality of the circumstances and focus on the inherent justice of the matter." *Id.* at 701.

> The determination of whether a breach is material "is a complicated question of fact involving an inquiry into such matters as whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party, whether custom and usage considers such a breach to be material, and whether the allowance of reciprocal non-performance by the non-breaching party will result in his accrual of an unreasonable or unfair advantage."

*Commonwealth Edison Co. v. Elston Ave. Props., LLC*, 2017 IL App (1st) 153228, ¶ 18, 76 N.E.3d 761, 767 (2017), quoting *William Blair & Co., LLC v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 346-47 (2005) (quoting *Sahadi*, 706 F.2d at 196). "Consequently, whether a breach is material generally should not be resolved at summary judgment." *Hunter Tech. Corp. v. Omega Glob. Techs., Inc.*, No. 20 C 4858, 2023 WL 3199818, at *17 (N.D. Ill. May 2, 2023), citing *Sahadi*, 706

8

F.2d at 196-97, and *Wolfram P'ship Ltd. v. LaSalle National Bank,* 328 Ill. App. 3d 207, 223 (1st Dist. 2001).

Talisman argues that courts "strictly construe notice requirements in surety bonds," so that this Court should decide as a matter of law that Defendants' failure to provide written notice by registered or certified mail of BBCE's default and termination pursuant Sections 3.1 and 3.2 of the Performance Bond was a breach of "express conditions precedent" that relieved Talisman of its obligations under the Performance Bond. (D.E. 50: Talisman Reply ("Reply") at 1-4.) Talisman is essentially arguing that such a breach would be material as a matter of law, but the three cases on which Plaintiff relies do not create a separate law of breach of surety contracts in a manner that might transform the question of material breach into a question of law. Instead, the Illinois courts have simply applied the material breach doctrine to surety or performance bond contracts, and in the cases relied on by Talisman, the result on summary judgment came out the movants' way, but not for reasons that would persuade this Court that summary judgment should be granted here, particularly where the Seventh Circuit has applied Illinois law to hold that ordinarily, the issue of material breach is a question of fact and not of law.

In the first of Talisman's cases, *Dragon*, 287 Ill. App. 3d at 33-34, the performance bond required the property owners to provide seven days' written notice to the contractor and the surety before terminating the contractor from the project, but the owners terminated the original contractor and hired a replacement "without consulting or even informing" the surety. *Id*. The *Dragon* court held that the owners' failure to provide adequate notice of the original contractor's termination and their hiring of a successor contractor "stripped" the surety of its contractual right under the performance bond to minimize its liability by participating in the selection of a successor contractor, and "constituted a material breach of contract which rendered the surety bonds null and

9

void." *Id*. The Illinois Appellate Court applied the material breach doctrine to affirm the Circuit Court's grant of summary judgment for the surety, but with relatively little or no discussion of how it determined the materiality of the breach, stating that materiality was established because the surety "[s]urely … would not have issued the surety bonds if it did not have the authority to protect itself through the selection of a successor contractor." *Id.* at 34. A fair inference from *Dragon* is that the factual basis for materiality of the breach was not disputed in that case, and that the *Dragon* court was not presented with evidence of the sort discussed below, raising questions of fact over whether the surety had sufficient notice to render a formal lack of notice non-material. *See id.* at 33-34 (stating that the owners had terminated the original contractor and hired a replacement "without consulting or even informing" the surety). Nothing about *Dragon* suggests that the materiality of a breach of a surety contract is categorically a purely legal question under Illinois law.

In the second case, *Solai*, 374 Ill. App. 3d at 836, the performance bond required the general contractor (the "owner" in the performance bond) to notify its subcontractor and the surety of its intent to declare the subcontractor in default, to wait 20 days after providing notice of default before terminating the subcontractor, and to pay the contract balance to the surety or a replacement subcontractor. *Id*. Instead, on one project the owner hired a replacement subcontractor before declaring the original one in default and terminating it, and in a second project the owner demanded performance from the surety nearly contemporaneously with its notice of termination of the subcontractor. The *Solai* court relied on *Dragon* to find that this conduct "stripped the surety of its options" to mitigate by deciding whether to arrange for completion of the project rather than determining whether or not to pay after the fact. *Id*. at 840-42. As such, the court held that the owner's conduct materially breached the terms of the performance bond and nullified the surety's

10

duty to perform. *Id*. Like the court in *Dragon*, the Illinois Appellate Court in *Solai*, applied the material breach doctrine to a surety contract, although it granted summary judgment for the surety with relatively little discussion of the material breach doctrine and based on apparently undisputed facts that, as we discuss further below, are not analogous to the factual posture of the instant case. *See id*. at 840-42 (stating that the owner had hired a replacement subcontractor and demanded performance from the surety before declaring the original subcontractor in default and terminating it). Like *Dragon*, the result in *Solai* does not compel a grant of summary judgment in this case or establish that this Court must treat the materiality of a breach of a notice provision in a surety contract as a purely legal question lending itself to summary judgment amid disputed factual circumstances concerning notice.

The third case Plaintiff relies on, *MCM Mgmt. Corp. v. Hudson Ins. Co.*, No. 21 C 4255, 2022 WL 17583756 (N.D. Ill. Dec. 12, 2022), stemmed from the same project at issue here but involved contracts with a different subcontractor and performance and payment bonds issued by a different surety. In *Hudson*, it was "undisputed" that the surety did not receive notice about any problems with the subcontractor, much less the subcontractor's default, until the plaintiff sent a letter demanding payment after it had already removed the subcontractor and performed the work at additional cost. *Id*. at *4. The court thus found that there were no issues of material fact as to whether the plaintiff complied with the notice requirements of the bonds and granted summary judgment in favor of the surety. *Id*. at *7. *Hudson* thus stands for the availability of summary judgment to a surety that can establish no genuine issue on materiality of a breach, based on *undisputed facts*:

> Plaintiff argues that there are issues of fact as to whether it complied with the requirements of Paragraph 3. The Court disagrees. It is undisputed that the first notice defendant received about any problems with the project was on July 31, 2020, when plaintiff notified defendant that: 1) both JEI (the Construction Manager

11

and original obligee) and MTS (the subcontractor and obligor) had defaulted; 2) MTS had "been removed" from the project; and 3) plaintiff was "forced to perform" the scope of work at a cost of greater than $4,000,000.00. Under Paragraph 3 of the Performance Bond, defendant was to be notified *before* a subcontractor default was declared and was supposed to have been at a conference to discuss a potential default. Only then could a default be declared, at which point the obligee was supposed to pay the balance of the subcontract amount to defendant. Plaintiff has put forth no evidence – disputed or otherwise – that suggests it (or the original obligee) complied with any of the requirements of Paragraph 3.

*Id.* at *8. The factual posture in *Hudson* is not the posture presented here on Talisman's summary judgment motion.

By contrast, Defendants here presented evidence that they contend shows Talisman had actual or constructive notice of BBCE's default and Jenkins' replacement of BBCE on the Project 11 months before Defendants sought payment under the Performance Bond, such that any breach of the notice provisions in the Performance Bond was not material. *See, e.g.*, *Bloom Twp. High Sch. v. Ill. Commerce Comm'n*, 309 Ill. App. 3d 163, 179 (1999) (holding that there was no material breach where a party to a contract "received actual notice and claim[ed] no prejudice" from the other contractual party's failure to give written notice as contemplated by the contract.) For example, Defendants presented the following undisputed facts:

- 1/17/19: Polec, Talisman's liaison to BBCE, told Keast (Talisman's Director of Risk Management) that BBCE was "engaging a construction attorney to file a mechanic's lien" and was retaining supervision at the Project "to mitigate any default circumstances."

- 1/25/19: Booth (BBCE's consultant, hired on Talisman's and Polec's recommendation) emailed Polec and Rivoir stating that Defendants would not pay in advance of work being performed.

- 1/26/19: Polec sought a conference with Keast, Booth and Mercantel (Talisman's President).

- 2/6/19: Booth emailed Keast stating that Rivoir wanted to complete work on the Project but would not be able to cover payroll, and Jenkins wanted to put a couple of extra workers on the Project.

- 2/13/19: Defendants sent a letter to BBCE and Talisman stating that they were considering declaring BBCE in default.

- 2/17/19: Rivoir emailed Booth, Polec and Cirri (Jenkins' president and CEO), stating that BBCE would stop work on the Project unless Jenkins changed the budget, work and payment parameters for the Project.

- 2/18/19: Cirri emailed Booth, Polec and Rivoir, stating that beginning on 2/19/19, Jenkins would remedy BBCE's default by having others perform the work specified in the BBCE Subcontract, and that the costs for completing the work would be charged back against the original contract amount.

- 2/26/19: Polec forwarded Rivoir's 2/17/19 email to Keast.[4]

- Talisman did not have any further communication with Defendants until January 2020, when Defendants made a claim for payment under the Performance Bond.

This evidence bears on the "complicated question of fact" of whether Defendants committed a material breach, including "whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to [Plaintiff] . . . and whether the allowance of reciprocal non-performance by [Plaintiff] will result in [its] accrual of an unreasonable or unfair advantage." *Commonwealth Edison*, 2017 IL App (1st) 153228, ¶ 18. Examining the record in the light most favorable to Defendants as the non-moving parties, and construing all reasonable inferences from the evidence in their favor, the Court cannot find that Talisman has met its burden of establishing no genuine issue of material fact as to whether Defendants committed a material breach that relieved Talisman of its duties under the Performance Bond.

II. **A Genuine Issue of Material Fact Exists as to Whether Plaintiff Had Actual or Constructive Notice of BBCE's Default and Defendants' Termination of BBCE**.

Specifically, Defendants contend that there is a genuine issue of material fact as to whether Talisman received actual notice that BBCE had defaulted its subcontract and Defendants were

---

[4] It is apparently disputed whether anyone informed Keast or Mercantel of Cirri's February 18 email.

back-filling BBCE's contractual obligations with another subcontractor in February 2019, from the emails between Rivoir, Cirri, Polec and Booth, as the latter two were "agents of Talisman based on their apparent authority," whose "knowledge was imputed to Talisman." (Defs.' Opp. at 1 and 3.) As with the Illinois doctrine of material breach, Plaintiff contends that the basic contract doctrines of actual and constructive notice do not apply to contracts of surety, and thus, that the above assertions creating an issue of fact as to whether Talisman had actual or constructive notice of BBCE's default, termination and replacement are irrelevant to whether Defendants' actions were a material breach that voided the Performance Bond. (Reply at 4.) But, as with the doctrine of material breach, Plaintiff has not presented authority that would persuade the Court that Illinois law excepts surety contracts from application of the doctrines of actual or constructive notice.[5] *Dragon*, *Solai* and *Hudson* do not discuss whether the surety had actual or constructive notice, and the mere absence of that issue from those three cases is not a basis to conclude that Illinois law treats materiality of a breach of notice requirements in a surety contract as a foregone legal conclusion for purposes of summary judgment.

Instead, the issues of actual or constructive notice, and whether Polec and Booth had actual, implied or apparent authority from Talisman such that their knowledge was imputed to Talisman, are issues that must be decided by the trier of fact. Under Illinois law, "[a] principal will be bound by not only that authority which he actually gives to another, but also by the authority which he appears to give." *Gilbert v. Sycamore Mun. Hosp.*, 156 Ill. 2d 511, 523 (1993). "Whether an alleged agent was authorized to act is a question of fact, as is whether a person had notice of the lack of

---

[5] Plaintiff submitted "supplemental authority" in support of its argument: a Florida trial court decision finding that certain notice requirements in a performance bond were preconditions to the surety's performance, and that breach of those notice provisions excused the surety's performance. (D.E. 52, Ex. A.) That case has no bearing on the instant matter; it presumably applied Florida procedural and substantive law (it cited no case law) and did not address the issue of material breach.

14

an agent's authority, or was put on notice by the circumstances." *Prutton v. Baumgart*, 2020 IL App (2d) 190346, ¶ 26 (Ill. App. 2020). Plaintiff essentially concedes that if its argument that actual or constructive notice does not apply to surety contracts fails, there are genuine issues of material fact as to whether or not the February 2019 emails provided Talisman with notice that BBCE had defaulted and that Defendants had terminated and replaced BBCE. (*See* Reply at 6-7.) Because the Performance Bond is a contract to which the doctrines of material breach, actual notice and constructive notice apply, these genuine issues of material fact remain.

**III.     Talisman Is Not Entitled to Summary Judgment on Defendants' Counterclaims.**

Talisman's claim that it is entitled to summary judgment on Defendants' Counterclaims relies on its argument that Defendants' failure to provide notice as specified in Section 3 of the Performance Bond was a material breach (or a failure to satisfy conditions precedent) that excused all of Talisman's obligations under the Performance Bond as a matter of law. (Talisman Mem. at 8-10; Reply at 8.) But the Court rejects these arguments for the reasons explained above and finds that genuine issues of material fact preclude summary judgment on the counterclaims.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion for summary judgment. (D.E. 37).

**ENTER:**

_____
**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATE: June 13, 2023**